BLUM COLLINS, LLP
  Craig M. Collins (Bar No. 151582)
  collins@blumcollins.com
  Hannah Bentley (Bar No. 132244)
  bentley@blumcollins.com
707 Wilshire Boulevard, Suite 4880
Los Angeles, California 90017-3501
Telephone:  213.572.0405
Facsimile:  213.572.0401

[counsel continued on fourth page hence]

# UNITED STATES DISTRICT COURT OF CALIFORNIA

# CENTRAL DISTRICT OF CALIFORNIA

MARIANNE AFIFI AND ABDELMONEM A. AFIFI, AS TRUSTEES OF THE AFIFI FAMILY TRUST; JOYCE GYRENIA WILKINS ALEXANDER, AS TRUSTEE OF THE ALEXANDER FAMILY TRUST; WILLIAM BARTEK; DONNE BERNABE; JAMES E. BERNASCONI; DON JEAN BONNET, AS TRUSTEE OF DON JEAN BONNET FAMILY TRUST; JEFFREY BORGES, AS TRUSTEE OF THE BORGES FAMILY TRUST; JEFFREY BORGES AND MICHELE BORGES; W BROWDER AND LEANNA BROWDER; JOSEPH BROWN AND CATHY BROWN, AS TRUSTEES OF THE JOSEPH AND CATHY BROWN FAMILY TRUST; ROY BRUDER, AS TRUSTEE OF THE ROY BRUDER 2002 TRUST; JOHN CAMBIANICA AND CAROL CAMBIANICA, AS TRUSTEES OF THE CAMBIANICA TRUST; BRUCE THOMAS CAMPBELL, AS TRUSTEE OF THE JAMES L. AND RUTH W. CAMPBELL LIVING TRUST; JOSEPH CARAMICO; MARGO ANN CARIGNAN, AS TRUSTEE OF MARGO ANN CARIGNAN REVOCABLE TRUST; ADOLFO CASTILLO AND ISAAC CASTILLO; ELLEN A. CHAO, AS

Case No.

**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS – TAKING UNDER FIFTH AMENDMENT (42 U.S.C. § 1983)**

DEMAND FOR JURY TRIAL

TRUSTEE OF THE LANCE L.
CHAO AND ELLEN A. CHAO
REVOCABLE TRUST; KENNETH
CHRISTIANSEN AND MEAGAN
CHRISTIANSEN; MARK COLON;
ADRIAN R. COOKS AND
STEPHANIE N. COOKS, AS
TRUSTEES OF THE ADRIAN R.
COOKS AND STEPHANIE N.
COOKS REVOCABLE TRUST;
DONNA CARDOZA-COSTA, AS
TRUSTEE OF THE COSTA
FAMILY TRUST; DONALD
CRAIGHEAD, AS TRUSTEE OF
THE DONALD CRAIGHEAD
IRREVOCABLE FAMILY TRUST;
ROBERT M. HEATER AND
CYNTHIA A. CRENSHAW, AS
TRUSTEES OF THE HEATER-
CRENSHAW 2020 REVOCABLE
TRUST; VIRGINIA CROSBY;
BEVERLY JEAN DAVIES, AS
TRUSTEE OF THE DAVIES
TRUST; ARTHUR FALCONER
AND BARBARA K. FALCONER,
AS TRUSTEES OF THE
FALCONER FAMILY TRUST;
NORMAN FARGO; BRUCE
FOSTER AND LISA FOSTER;
STEVEN FRANK AND
JACQUELYN FRANK, AS
TRUSTEES OF THE FRANK
REVOCABLE TRUST; BONNIE
GARNER; ISIDRO GODINEZ;
BERNIE GONZALES; JOHN
GOODELL; PHILIP GRAY; ALAN
GRIMSHAW; CYNTHIA
HARCARIK AND JOHN CHARLES
MILLER; HAL HAVLISCH; RENA
HAYAMI; KIMBERLY HAYS;
KINGSLEY HINES AND CAMILLE
W. HINES, AS TRUSTEES OF THE
KINGSLEY HINES AND CAMILLE
W. HINES FAMILY TRUST;
WILMA HOMSY, AS TRUSTEE OF
THE HOMSY FAMILY
REVOCABLE LIVING TRUST;
PETER R. HOPKINSON; DOUGLAS
DONALD HUNDELT AND
CRISTINA ISABEL HUNDELT, AS
TRUSTEES OF THE HUNDELT
FAMILY TRUST; JONI JAMES;
MARCIA JANICH, CURTIS
BROWNELL, AND MARILYN
BEYER; DAVID M. JOHNSON

AND LINDA J. JOHNSON, AS
TRUSTEES OF THE JOHNSON
FAMILY TRUST; VERNER H.
JOHNSON JR., AS TRUSTEE OF
THE JOE AND RUTH LA MOTTE
1978 EXEMPTION TRUST; JUDITH
FAYE KIMURA AND MASAYUKI
KIMURA, AS TRUSTEES OF THE
KIMURA FAMILY TRUST; LISA
LANGERE, AS TRUSTEE OF THE
LISA LANGERE TRUST;
PATRICIA LEKO, AS TRUSTEE OF
THE HELEN M. KILGORE TRUST;
TIMOTHY LONG; PETER J. LUNA;
STEFAN LYSENKO AND SOPHIE
LYSENKO; THOMAS
MACKINNON AND ELIZABETH
MACKINNON; MARTIN K.
MACLEAN; KIM ILENE
MCDANIEL; JOHN B. MCMANUS;
BOB MERZOIAN AND
ROSEMARY MERZOIAN;
BARBARA MUSKAT, AS
TRUSTEE OF THE BARBARA
MUSKAT SEPARATE PROPERTY
TRUST; CORNELIUS
KEMPENAAR AND LAURIE E.
KEMPENAAR, AS TRUSTEES OF
THE KEMPENAAR FAMILY
TRUST; EVERT KEMPENAAR
AND VIKI KEMPENAAR, AS
TRUSTEES OF THE KEMPENAAR
REVOCABLE LIVING TRUST;
TIMOTHY S. THOMAS AND
MARGARETHA C. H. THOMAS,
AS TRUSTEES OF THE THOMAS
FAMILY TRUST; REGINA A.
NEUMAN, AS TRUSTEE OF THE
ARN TRUST OF 2002; LEONARD
NICHOLS; KENNETH A. NOONAN
AND COLLEEN B. NOONAN, AS
TRUSTEES OF THE KENNETH A.
NOONAN AND COLLEEN B.
NOONAN 1999 TRUST;
CHRISTOPHER NOSSAMAN AND
JENNIFER NOSSAMAN; ANITA I.
ORTEGA; DANIEL OWEN AND
KELLEY OWEN; TIMOTHY
PATTERSON AND LINDA
PATTERSON; LORETTA
PAULSON; CHARLES PINKLEY
AND NORMA PINKLEY; GEORGE
MERLE PLYLEY, AS TRUSTEE OF
THE GEORGE MERLE PLYLEY
AND BARBARA HOPE PLYLEY

COMPLAINT                                    3

1  2004 REVOCABLE TRUST; BRUCE POLLOCK AND KATHERINE
2  POLLOCK; CLYDE A. PRICKETT, AS TRUSTEE OF THE CLYDE A.
3  PRICKETT FAMILY TRUST; TIMOTHY J. REDING AND
4  CAROL J. REDING, AS TRUSTEES OF THE TIMOTHY J. REDING
5  AND CAROL IGERCICH-REDING 2017 TRUST; AMY M. REESE, AS
6  TRUSTEE OF THE AMY M. REESE TRUST, 2000; WILLIAM W. ROBB,
7  AS TRUSTEE OF THE DANUTA H. AND WILLIAM W. ROBB
8  DECLARATION OF TRUST; MICHAEL ROST AND KEIKO
9  ROST; STEVEN RUARK; JEFFERY J. SALE; PAUL R. SCHANGE AND
10  VIRGINIA S. SCHANGE, AS TRUSTEES OF THE SCHANGE
11  FAMILY TRUST; FRANK M. SERVEDIO AND NADINE M.
12  HAYNES-SERVEDIO, AS TRUSTEES OF THE FRANK M.
13  SERVEDIO FAMILY TRUST; HAROLD SPEEGLE; STEVEN
14  STRACHAN, AS TRUSTEE OF THE STRACHAN 2016 TRUST; MORRIS
15  SUSOEFF; JOHN D. TILLMAN AND CAROL J. TILLMAN; JOSEPH
16  USCHMANN; KAREN WALDOW; JERRY WIGGINS; IRMA L.
17  WISENER, AS TRUSTEE OF THE 2012 IRMA L. WISENER
18  REVOCABLE TRUST; DM WRIGHT; JOHN YOUNG AND
19  TERRY YOUNG,

20      Plaintiffs,

21      vs.

22  CAMBRIA COMMUNITY
23  SERVICES DISTRICT; and

24

25  COUNTY OF SAN LUIS OBISPO,
      Defendants.

26

27

28

COMPLAINT                                    4

1   Plaintiffs' Counsel Continued:

2   KASSOUNI LAW
       Timothy V. Kassouni (Bar No. 142907)
3        timothy@kassounilaw.com
    455 Capitol Mall, Suite 604
4   Sacramento, CA  95814
    Telephone:  916.930.0030
5   Facsimile:  916.930.0033

6   Attorneys for Plaintiffs
    Marianne Afifi, et al.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **Introduction**

1.      The Plaintiffs own single-family-residential-zoned vacant lots in the Cambria area of San Luis Obispo County. The Defendant Cambria Community Services District and Defendant County of San Luis Obispo have worked in concert successfully to block the Plaintiffs from building homes on those lots. The Defendants have done so by a simple "Catch-22." The Defendant County insists that before it will allow the Plaintiffs to build homes, the Plaintiffs must obtain water and sewer service to their lots from the Defendant District (i.e., not by any alternate means such as drilling wells or installing septic tanks). The Defendant District then claims it cannot provide water to the Plaintiffs because it has no water to give (and will not provide sewer service, though it has plenty of capacity, because the Plaintiffs have no need for sewer service since the District refuses to give them water service). The Defendant District lacks water because the District has for many years deliberately incapacitated itself from providing adequate water. In the late 1990's, the then-Board members of the District, who were dedicated to their official mission as directors of a water district but naïve as to politics, obtained permits and funding for a desalination plant that would have provided water for all—both the "haves" and the "have nots." The owners of lots in Cambria that had water already and who didn't want their neighbors to build, threw out the members of the District Board and elected "no growth" members to the District Board. The no-growth District Board members killed the desalination plant and made sure the District would find no source of water for the Plaintiffs (though in an irony bitter to the "have nots," the "haves" eventually built themselves a

desalination plant but vowed to run it at only about 1/10 speed and promised every drop of water it produces to the "haves" only and none to the "have nots"). The people who have always had water (i.e., the "haves") and effectively confiscated the properties belonging to those who never had water (i.e., the "have nots," also known as Plaintiffs). By this suit, the Plaintiffs (have nots) ask that the "haves" finally pay for what they have taken from the Plaintiffs. Plaintiffs seek a judgment in their favor for the value of their lots today against the District and County. This claim is based on the Fifth Amendment to the U.S. Constitution, as made applicable to state and local governments by the 14th Amendment. The Defendants District and County will then pass along this cost to their ratepayers and taxpayers, respectively, who have benefitted from this wholesale confiscation of land from the have nots.

2. The County and District have joint and several liability for taking property without just compensation. Plaintiffs deserve to be compensated for the taking of their property.

3. The Plaintiffs complain and allege against Defendant County of San Luis Obispo and Defendant Cambria Community Services District:

**Parties**

4. Plaintiffs Marianne Afifi and Abdelmonem A. Afifi ("the Afifis"), as trustees of the Afifi Family Trust, are citizens of the State of California. They own property in Cambria at 2085 Avon Avenue.

5. Plaintiff Joyce Gyrenia Wilkins Alexander ("Alexander"), as trustee of The Alexander Family Trust, is a citizen of the State of California. They own property in Cambria at McCabe Drive.

6.     Plaintiff William Bartek ("Bartek") is a citizen of the State of Hawaii. He owns property in Cambria at Bristol Street.

7.     Plaintiff Donne Bernabe ("Bernabe") is a citizen of the State of California. She owns property in Cambria at Langton Street.

8.     Plaintiff James E. Bernasconi ("Bernasconi") is a citizen of the State of California. He owns property in Cambria at Lawson Place.

9.     Plaintiff Don Jean Bonnet ("Bonnet"), as trustee of the Don Jean Bonnet Family Trust, is a citizen of the State of California. They own property in Cambria at Sandown Place.

10.    Plaintiff Jeffrey Borges ("Borges"), as trustee of the Borges Family Trust, is a citizen of the State of California. He owns property in Cambria at Dove Dale Avenue and Kerwin Avenue.

11.    Plaintiffs Jeffrey Borges and Michele Borges ("the Borgeses") are citizens of the State of California. They own property in Cambria at Leighton Street, Gleason Street, and 2982 Buckingham.

12.    Plaintiffs W and Leanna Browder ("the Browders") are citizens of the State of California. They own property in Cambria at Pembrook Drive.

13.    Plaintiffs Joseph Brown and Cathy Brown ("the Browns"), as trustees of The Joseph and Cathy Brown Family Trust, are citizens of the State of California. They own property at Berwick Drive.

14.    Plaintiff Roy Bruder ("Bruder"), as trustee of The Roy Bruder 2002 Trust, is a citizen of the State of California. He owns property in Cambria at Richard Avenue.

15.    Plaintiffs John Cambianica and Carol Cambianica ("the

Cambianicas"), as trustees of The Cambianica Trust, are citizens of the State of California. They own an interest in property in Cambria at Croyden Lane.

16.     Plaintiff Bruce Thomas Campbell ("Campbell"), as trustee of the James L. and Ruth W. Campbell Living Trust, is a citizen of the State of California. He owns property in Cambria at Emerson Road.

17.     Plaintiff Joseph Caramico ("Caramico") is a citizen of the State of California. He owns property in Cambria at Green Street.

18.     Plaintiff Margo Ann Carignan ("Carignan"), as trustee of the Margo Ann Carignan Revocable Trust, is a citizen of the State of Hawaii. She owns property in Cambria at Saint James Road.

19.     Plaintiffs Adolfo Castillo and Isaac Castillo ("the Castillos") are citizens of the State of California. They own property in Cambria at 1590 Spencer Street.

20.     Plaintiff Ellen A. Chao ("Chao"), as the trustee of The Lance L. Chao and Ellen A. Chao Revocable Trust, is a citizen of the State of California. She owns property in Cambria at Chester Lane, Melrose, and Richard Avenue.

21.     Plaintiffs Kenneth and Meagan Christiansen ("the Christiansens") are citizens of the State of Alaska. They own property in Cambria at Sandown Place.

22.     Plaintiff Mark Colon ("Colon") is a citizen of the State of California. He owns property in Cambria at Sandown Place.

23.     Plaintiffs Adrian R. Cooks and Stephanie N. Cooks ("the Cooks"), as trustees of the Adrian R. Cooks and Stephanie N. Cooks Revocable Trust, are citizens of the State of California. They own property at 2105 Blythe Place.

24.     Plaintiff Donna Cardoza-Costa ("Cardoza-Costa"), as trustee of the

Costa Family Trust, is a citizen of the State of California. She owns property in Cambria at Chester Lane, 2530 Banbury Road, and Pineridge Drive.

25.     Plaintiff Donald Craighead ("Craighead"), as trustee of the Donald Craighead Irrevocable Family Trust, is a citizen of the State of California. He owns property in Cambria at 2552 Romney Drive.

26.     Plaintiffs Robert M. Heater and Cynthia A. Crenshaw ("Heater-Crenshaw"), as trustees of the Heater-Crenshaw 2020 Revocable Family Trust, are citizens of the State of California. They own property in Cambria at Berwick Drive.

27.     Plaintiff Virginia Crosby ("Crosby") is a citizen of the State of California. She owns property in Cambria at Sundown Place.

28.     Plaintiff Beverly Jean Davies ("Davies"), as trustee of the Davies Trust, is a citizen of the State of California. She owns property in Cambria at 2465 Piney Way.

29.     Plaintiffs Arthur Falconer and Barbara K. Falconer ("the Falconers"), as trustees of the Falconer Family Revocable Trust, are citizens of the State of California. They own property in Cambria at Windsor Boulevard.

30.     Plaintiff Norman Fargo ("Fargo") is a citizen of the State of Idaho. He owns property in Cambria at Alban Place.

31.     Plaintiffs Bruce and Lisa Foster ("the Fosters") are citizens of the State of Arizona. They own property in Cambria at Sheffield Street.

32.     Plaintiffs Steven Frank and Jaquelyn Frank ("the Franks"), as trustees of the Frank Revocable Trust are citizens of the State of California. They own property in Cambria at Arliss Drive.

COMPLAINT                                          10

33.     Plaintiff Bonnie Garner ("Garner") is a citizen of the State of California. She owns property in Cambria at 2225 Leona Drive.

34.     Plaintiff Isidro Godinez ("Godinez") is a citizen of the State of California. He owns property in Cambria at Leona Drive.

35.     Plaintiff Bernie Gonzales ("Gonzales") is a citizen of the State of California. He owns property in Cambria at Emerson Road.

36.     Plaintiff John Goodell ("Goodell") is a citizen of the State of California. He owns property in Cambria at Alban Place.

37.     Plaintiff Philip Gray ("Gray") is a citizen of the State of California. He owns property in Cambria at London Lane and Green Street.

38.     Plaintiff Alan Grimshaw ("Grimshaw") is a citizen of the State of California. He owns property in Cambria at 1975 Arliss Drive.

39.     Plaintiffs Cynthia Harcarik and John Charles Miller are citizens of the State of Arizona. They own property in Cambria at Bradford Road.

40.     Plaintiff Hal Havlisch ("Havlisch") is a citizen of the State of California. He owns property in Cambria at Tweed Avenue.

41.     Plaintiff Rena Hayami ("Hayami") is a citizen of the State of California. She owns property in Cambria at Dreydon Avenue.

42.     Plaintiff Kimberley Hays ("Hays") is a citizen of the State of California. She owns property in Cambria at 1865 Avon Avenue.

43.     Plaintiffs Kingsley Hines and Camille W. Hines ("the Hineses"), as trustees of the Kingsley Hines and Camille W. Hines Family Trust, are citizens of the State of California. They own property in Cambria at Camborne Place.

44.     Plaintiff Wilma Homsy ("Homsy"), as trustee of The Homsy Family

Revocable Living Trust, is a citizen of the State of California. He owns property in Cambria at 1935 Dorking Avenue.

45.   Plaintiff Peter R. Hopkinson ("Hopkinson") is a citizen of the State of California. He owns property in Cambria at Cowper Street.

46.   Plaintiffs Douglas Donald Hundelt and Cristina Isabel Hundelt ("the Hundelts"), as trustees of The Hundelt Family Trust, are citizens of the State of California. They own property in Cambria at 1811 Avon Avenue.

47.   Plaintiff Joni James ("James") is a citizen of the State of Nevada. She owns property in Cambria at 2161 Burton Drive.

48.   Plaintiffs Marcia Janich, Curtis Brownell, and Marilyn Beyer are citizens of the State of California. They own property in Cambria at 2697 Trenton Street.

49.   Plaintiffs David M. Johnson and Linda J. Johnson ("the Johnsons"), as trustees of the Johnson Family Trust, are citizens of the State of California. They own property in Cambria at 2098 Emmons Road.

50.   Plaintiff Verner H. Johnson Jr. ("Johnson"), as trustee of The Joe and Ruth La Motte 1978 Exemption Trust, is a citizen of the State of California. He owns property in Cambria at Burton Drive.

51.   Plaintiffs Judith Faye Kimura and Masayuki Kimura ("the Kimuras"), as trustees of The Kimura Family Trust, are citizens of the State of California. They own property in Cambria at 1826 Tweed Avenue.

52.   Plaintiff Lisa Langere ("Langere"), as trustee of the Lisa Langere Trust, is a citizen of the State of California. She owns property in Cambria at Berwick Drive.

53.     Plaintiff Patricia Leko ("Leko"), as trustee of the Helen M. Kilgore Trust, is a citizen of the State of California. She owns property in Cambria at Richard Avenue.

54.     Plaintiff Timothy Long ("Long") is a citizen of the State of California. He owns property in Cambria at Londonderry Lane.

55.     Plaintiff Peter J. Luna ("Luna") is a citizen of the State of California. He owns property in Cambria at 2948 Buckingham Place.

56.     Plaintiffs Stefan Lysenko and Sophie Lysenko ("the Lysenkos") of the State of California. They own property in Cambria at Pierce Avenue.

57.     Plaintiffs Thomas Mackinnon and Elizabeth Mackinnon ("the Mackinnons") are citizens of the State of California. They own property in Cambria at Langton Street.

58.     Plaintiff Martin K. Maclean ("Maclean") is a citizen of the State of Arizona. He owns property in Cambria at Sunbury Avenue.

59.     Plaintiff Kim Ilene McDaniel ("McDaniel") is a citizen of the State of California. She owns property in Cambria at 2892 Burton Circle.

60.     Plaintiff John B. McManus ("McManus") is a citizen of the State of California. He owns property in Cambria at Dowing Avenue.

61.     Plaintiffs Bob Merzoian and Rosemary Merzoian ("the Merzoians") are citizens of the State of California. They own property in Cambria at Preston Street.

62.     Plaintiff Barbara Muskat ("Muskat"), as trustee of the Barbara Muskat Separate Property Trust, is a citizen of the State of California. She owns an interest in property in Cambria at 2333 McCabe Drive and 2337 McCabe Drive.

63.     Plaintiffs Cornelius Kempenaar and Laurie E. Kempenaar, as trustees of The Kempenaar Family Trust, are citizens of the State of California. They own an interest in property in Cambria at 2333 McCabe Drive and 2337 McCabe Drive.

64.     Plaintiffs Evert Kempenaar and Viki Kempenaar, as trustees of the Kempenaar Revocable Living Trust, are citizens of the State of California. They own an interest in property in Cambria at 2333 McCabe Drive and 2337 McCabe Drive.

65.     Plaintiffs Timothy S. Thomas and Margaretha C. H. Thomas ("the Thomases"), as trustees of the Thomas Family Trust, are citizens of the State of Arizona. They own an interest property in Cambria at 2333 McCabe Drive and 2337 McCabe Drive.

66.     Plaintiff Regina A. Neuman ("Neuman"), as trustee of the ARN Trust of 2002, is a citizen of the State of California. She owns property in Cambria at 2320 Leona Drive.

67.     Plaintiff Leonard Nichols ("Nichols") is a citizen of the State of Nevada. He owns property in Cambria at Yorkshire Street.

68.     Plaintiffs Kenneth A. Noonan and Colleen B. Noonan ("the Noonans"), as trustees of the Kenneth A. Noonan and Colleen B. Noonan 1999 Trust, are citizens of the State of California. They own property in Cambria at Burton Drive.

69.     Plaintiffs Christopher Nossaman and Jennifer Nossaman ("the Nossamans") are citizens of the State of California. They own property in Cambria at Pineridge Drive.

70.     Plaintiff Anita I. Ortega ("Ortega") is a citizen of the State of

California. She owns property in Cambria at Ramsey Drive.

71.     Plaintiffs Daniel Owen and Kelley Owen ("the Owens") are citizens of the State of Arizona. They own property in Cambria at Burton Drive.

72.     Plaintiffs Timothy Patterson and Linda Patterson ("the Pattersons") are citizens of the State of California. They own property in Cambria at Fern Drive.

73.     Plaintiff Loretta Paulson ("Paulson") is a citizen of the State of Connecticut. She owns property in Cambria at Alban Place.

74.     Plaintiffs Charles Pinkley and Norma Pinkley ("the Pinkleys") are citizens of the State of California. They own property in Cambria at Fern Drive.

75.     Plaintiff George Merle Plyley ("Plyley"), as trustee of the George Merle Plyley and Barbara Hope Plyley 2004 Revocable Trust, is a citizen of the State of California. He owns property in Cambria at Burton Drive.

76.     Plaintiffs Bruce Pollock and Katherine Pollock ("the Pollocks") are citizens of the State of California. They own property in Cambria at Sandown Place.

77.     Plaintiff Clyde A. Prickett ("Prickett"), as trustee of the Clyde A. Prickett Family Trust, is a citizen of the State of California. He owns property in Cambria at Linden Court.

78.     Plaintiffs Timothy J. Reding and Carol J. Reding ("the Redings"), as trustees of the Timothy J. Reding and Carol Igercich-Reding 2017 Trust, are citizens of the State of California. They own property in Cambria at Preston Street.

79.     Plaintiff Amy M. Reese ("Reese"), as trustee of the Amy M. Reese Trust, 2000, is a citizen of the State of California. She owns property in Cambria at

Hillcrest Drive.

80.     Plaintiff William W. Robb ("Robb"), as trustee of the Danuta H. and William W. Robb Declaration of Trust, is a citizen of the State of California. He owns property in Cambria at Macleod Way.

81.     Plaintiffs Michael Rost and Keiko Rost ("the Rosts") are citizens of the State of California. They own property in Cambria at Pierce Avenue.

82.     Plaintiff Steven Ruark ("Ruark") is a citizen of the State of California. He owns property in Cambria at Finney Road.

83.     Plaintiff Jeffery J. Sale ("Sale") is a citizen of the State of California. He owns property in Cambria at Burton Circle and Alban Place.

84.     Plaintiffs Paul R. Schange and Virginia S. Schange ("the Schanges"), as trustees of the Schange Family Trust, are citizens of the State of California. They own property in Cambria at Kenneth Drive and 395 Ivar Street.

85.     Plaintiffs Frank M. Servedio and Nadine M. Haynes-Servedio ("the Servedios"), as trustees of the Frank M. Servedio Family Trust, are citizens of the State of California. They own property in Cambria at Richard Avenue.

86.     Plaintiff Harold Speegle ("Speegle") is a citizen of the State of California. He owns property in Cambria at 2175 Andover Place.

87.     Plaintiff Steven Strachan ("Strachan"), as trustee of the Strachan 2016 Trust, is a citizen of the State of California. He owns property in Cambria at Newton Road.

88.     Plaintiff Morris Susoeff ("Susoeff") is a citizen of the State of California. He owns property in Cambria at Kenneth Drive.

89.     Plaintiffs John D. Tillman and Carol J. Tillman ("the Tillmans") are

citizens of the State of California. They own property in Cambria at Bradford Road.

90.     Plaintiff Joseph Uschmann ("Uschmann") is a citizen of the State of California. He owns property in Cambria at Newton Drive.

91.     Plaintiff Karen Waldow ("Waldow") is a citizen of the State of California. She owns property in Cambria at 1835 Stuart Street.

92.     Plaintiff Jerry Wiggins ("Wiggins") is a citizen of the State of California. He owns property in Cambria at Margate Avenue.

93.     Plaintiff Irma L. Wisener ("Wisener"), as trustee of the 2012 Irma L. Wisener Revocable Trust, is a citizen of the State of California. She owns property in Cambria at Rogers Drive.

94.     Plaintiff DM Wright ("Wright") is a citizen of the State of California. They own property in Cambria at Tully Place.

95.     Plaintiffs John Young and Terry Young ("the Youngs") are citizens of the State of California. They own an interest in property in Cambria at Croyden Lane.

96.     Plaintiffs are informed and believe, and on that basis allege Defendant County of San Luis Obispo ("County") is and at all times mentioned herein was a political subdivision of the State of California.

97.     Plaintiffs are informed and believe and on that basis allege Defendant Cambria Community Service District ("District") is and at all times mentioned herein, was a duly incorporated municipal corporation and/or special district located within the State of California, and County of San Luis Obispo.

98.     Plaintiffs are informed and believe, and thereon allege that at all times

herein mentioned the Defendants, and each of them, were the agents of each other, and, in doing the things hereafter alleged, were acting within the scope, course and purpose of the agency, and were acting within the apparent scope of the agency, and acted with the permission and consent of the other Defendant. Plaintiffs alternately allege that the County and the District were co-conspirators.

**Jurisdiction and venue**

99.    Plaintiffs' claims are based on federal, subject-matter jurisdiction. This Court has jurisdiction over this proceeding under 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983 *et seq. Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2167 (2019)  ("We now conclude that the state-litigation requirement imposes an unjustifiable burden on takings plaintiffs, conflicts with the rest of our takings jurisprudence, and must be overruled. A property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it.")  The amount in controversy exceeds $75,000 as to each individual plaintiff.

100.    Venue properly lies in this judicial district under 28 U.S.C. § 1391(b) because the named defendants' properties at issue are located within the Central District of California, and the action arises out of events in San Luis Obispo County, California.

**Allegations common to all causes of action**

101.    The Plaintiffs own legally created and approved, but undeveloped, residentially zoned lots in Cambria, located in an unincorporated area within the County of San Luis Obispo.  Plaintiffs own lots acquired at a fair market price that reflected the reasonable expectation that homes could be built on the lots.

Plaintiffs (or their predecessors in interest) paid for water and sewer improvements, through water and sewer availability or standby assessments, property taxes, and a special assessment to finance the construction of the District's sewer system.  Water and sewer lines are in the street near the Plaintiffs' lots.

102.   The County and Cambria County Water District (the District's predecessor in interest) executed two Joint Power Agreements (JPA's) on or about the early 1970's.  Therein, the parties agreed that (a) a sewer system was necessary in Cambria; (b) the County would conduct assessment proceedings to finance the construction of sewer improvements; and (c) the Cambria County Water District would own and operate the resulting sewer improvements.

103.   The resulting assessment proceedings created two assessment districts, and the County Board resolved that the assessed properties were to benefit from and be assessed in proportion to the cost of the improvements.  The special benefit accruing to the assessed properties was supposed to be the right to use the District's sewer system.

104.   The first phase of the sewer improvements was financed by a HUD loan between the federal government and Cambria County Water District.  The intent of the HUD loan and associated assessment proceedings was to provide sewer service to those properties within assessment district #1.  The HUD loan was repaid by special assessments upon those properties within assessment district #1.

105.   The second phase of sewer improvements was financed by an EPA grant between the federal government and County.  The EPA grant required assessments to pay the local matching share of the cost to complete the

improvements.  The landowners within assessment district #2 were assessed and paid the local matching share required by the EPA grant.  The intent of the EPA grant and associated assessment proceedings was to provide sewer service to those properties within assessments district #2.

106.   On or about 1976, the District was created and assumed all duties and liabilities of the Cambria County Water District, which was simultaneously dissolved.

107.   Plaintiffs believe and thereon allege that their properties were among the class of properties intended to benefit from the JPA's, HUD loan, and EPA grant ("Agreements").  Plaintiffs believe and thereon allege that their properties were to benefit from the assessment proceedings, wherein their properties were to obtain a special benefit right from the payment of special assessments.  The special benefit that accrued was the right to sewer service from the District.  Plaintiffs (or their predecessors in interest) have paid assessments to the District and its predecessor, but they have been denied the intended benefit of the assessment, the right to sewer service.

108.   Plaintiffs are informed and believe, and on that basis allege that the Defendants have determined they will not provide sewer or water service because they wish to prevent the lots from being developed, effectively re-zoning the properties (and hundreds of others like them) as open space, while avoiding paying the lot owners for the creation of this open space.

109.   The District has indicated at various times that "at this time" it is not accepting applications for service and has not stated whether it plans to provide future services, citing a decades long water "emergency."  The District most

recently confirmed in November 2017 it is not accepting applications for future water and/or sewer service. As such it would be futile for Plaintiffs to apply to obtain water and/or service through the District. More specifically, the County will not even process an application for a land use permit unless such application comes with a written verification of water and sewer service from the District, and the District will not issue such verification to Plaintiffs, because Plaintiffs are ineligible for water or sewer service under the District's code.

110. To illustrate the futility of each Plaintiff herein applying for a land use permit from the County for development of their lots, and the futility of seeking water and sewer service verification from the District, in January 2017, Cambria lot owners Michael and Karen Windeler applied for a minor use or land use permit with the County, the local land use authority. The County rejected the unprocessed applications. The County rejected the applications because they were not accompanied by written verification of water and sewer service from the District.

111. Plaintiffs are informed and believe that it is impossible under the County's laws and regulations to develop a single-family home on their lots without obtaining water and sewer service from the District. However, to confirm whether there were any conditions under which the lots could be developed without water or sewer service from the District, the Windelers submitted a development application which sought development without water and/or sewer service from the District. The Windelers elected to seek a variance from the requirements for written verification of water and sewer service from the District. They submitted a Development Application to the County on or about April 24, 2017, with a request for a variance from all requirements that would bar

development without written verification of water and/or sewer service from the District.

112.   Because development would not be possible without the Variance, the County and the Windelers agreed to proceed to hearing first with the Variance request submitted with the development application.  The Development Application required a variance from several County standards and requirements, including Community Wide Planning Area Standard 8, which requires development applications to include written verification of water and sewer service from the District.   The Development Application and cover letter clarified that the Windelers were prepared to develop with any combination of services that would be acceptable to the County.  Specifically, they were prepared to develop with water sourced from an on-site well or trucked in water, with wastewater treatment from the public sewer or an on-site septic system.  The Windelers also requested that, alternatively, the County require the District to process and approve a connection to the District's water and sewer systems.

113.   The Application first went before the County Planning Commission. The hearing on the Application before the County Planning Commission took place on August 24, 2017.  The County Planning Commission applied § 22.62.070(D)(1) of the County Code ("County Variance Code") in considering the variance, which sets forth five findings that must be made in order grant a variance.

114.   The County Planning Commission denied the Application finding it satisfied none of the five factors of the County Variance Code that must be met to support granting a variance.  The County Planning Commission concluded that

allowing the Windeler Property to develop without District water and sewer service would contravene the District's Buildout Reduction Program and the County's growth limitations found in its Local Coastal Program.

115.   The Windelers timely appealed to the County Board of Supervisors ("County Board").  The appeal asserted the County Planning Commission had erred.

116.   The County Board of Supervisors heard and denied the appeal on October 17, 2017. On October 24, 2017, the County officially adopted Resolution No. 2017-265, denying the appeal of the denial of the Application ("Resolution"). The Resolution affirmed the Planning Commission's findings that none of the five factors under the County Variance Ordinance were met.  The County Board found that allowing the Windeler Property to develop without District water and sewer service would compel the County Board to allow development of other similar properties (i.e., those without District wait-list position, including those owned by the non-Windeler Plaintiffs) which would contravene the growth assumptions in the County's Local Coastal Program.

117.   The denial of the Windelers' Application demonstrates that their property cannot be developed.  The Windeler Property cannot be used as subdivided and zoned, and the Windelers have been denied all economically viable use of their property.  Plaintiffs other than the Windelers are, from the standpoint of an available variance, in substantively the same position as the Windelers and thus have likewise been denied all economically viable use of their property. The multiple findings, each independently justifying the denial of the variance would apply to the Plaintiffs herein.  For example, the County Planning Commission and

County Board found that a) development without water and sewer service from the District would require an amendment to the County's Title 26 (Growth Management Ordinance) which cannot be waived with a variance, b) state health and safety regulations prevent a domestic well and septic system on lots under one half acre (many properties are well below one-half acre), and c) development of 1871 lots without wait-list positions would contravene the District's Build Out Reduction Program and growth assumptions in the County's Local Coastal Program. In other words, it would be futile for the remaining Plaintiffs to pursue development of their properties through a variance or any other form of application as they do not have and cannot get verification of water or sewer service from the District, and the County will not allow development without such verification. Because the Plaintiffs lack wait-list positions, and District Code prevents them from applying to join the closed waiting list, the properties are ineligible to obtain intent-to-serve letters.

118.   Rather than a shortage of water, regulations adopted and implemented to limit development are the irrefutable reason Plaintiffs are ineligible to obtain verification that the District plans to provide services to the properties. Development is prohibited because District Code prevents the properties from obtaining water and sewer services from the District, and the County will not approve the use of alternative sources of water and wastewater treatment.

119.   Plaintiffs are prohibited from developing because the Defendants have effectively imposed a permanent bar on new connections to water and sewer.

120.   Plaintiffs are informed and believe that their lots have zero or *de minimus* value because of the decision of Defendants to not provide water and/or

sewer service or allow development of their properties.  Plaintiffs have paid assessments levied to repay water infrastructure loans, property taxes, and water and sewer availability or standby assessments levied to support the water and sewer infrastructure for Cambria. In addition, Plaintiffs were subjected to a special assessment which paid for the build out of the sewer infrastructure in Cambria.

121.   Plaintiffs have been denied the right to develop single family homes on their property purportedly of an "emergency" shortage of water.  Plaintiffs are informed and believe they have been denied the right of development because of the decision to stop or severely limit growth.  Indeed, Defendants have adopted permanent growth limiting regulations, which arise from the exercise of land use authority, and will remain in place whether or not there is a shortage of water.

122.   In reality, the County, working in concert with the District, has decided it will not allow Plaintiffs and hundreds of other property owners the right to develop their lots out of a desire to preserve the lesser developed character of Cambria by limiting growth.  Plaintiffs are informed and believe that Defendants were aware their actions and inactions would take Plaintiffs' property for public use without compensation and developed a course of action designed to prevent or inhibit property owners from obtaining just compensation.

123.   The District cannot use the water emergency as a cloak to hide the undeniable truth that it will never provide intent-to-serve letters or future service connections to Plaintiffs' properties. Plaintiffs are informed and believe that Defendants have determined they will not allow the lots, and hundreds of others like them to be developed, effectively re-zoning the lots for open space without formally taking such action.

124.   Plaintiffs are informed and believe that Defendants have intentionally used the temporary water shortage as pretextual shield to avoid taking claims that would otherwise arise from the explicit adoption of growth-limiting regulations applied to Plaintiffs and similarly situated lot owners or open space re-zoning that prevent Plaintiffs and similarly situated property owners from developing legal lots. Plaintiffs are informed and believe that the County and District have conspired to deny development while preventing taking claims from being ripe, purposefully leaving Plaintiffs and hundreds of other lot owners in a legal limbo, with no right of development but no definitive decision permanently denying them the right to develop.  Plaintiffs are informed and believe, and on that basis allege the District has adopted a strategy of not accepting applications for service in order to avoid denying applications for service, while the County refuses to accept applications for development based on the absence of a letter affirming that the District actually plans to provide water and sewer service to the lot.

125.   The County and District have failed to acquire sufficient water that could serve hundreds of legal lots, nor have they taken any steps to compensate the owners of these lots, even though on information and belief, the County and District have decided, in the interests of the community as a whole, that these lots should not be developed.  Plaintiffs are informed and believe and thereon allege that District, in concert with County, has developed plans to obtain additional water for lot owners who have secured a place on the District wait list, but affirmatively decided this additional water source be undersized so it will serve only those lot owners and not Plaintiffs.  Plaintiffs are informed and believe and on that basis allege that such decision was made to comply with growth limitations

adopted by the County. Plaintiffs are informed and believe that Defendants' strategy is one of attrition, attempting to avoid explicitly denying development applications, while hoping that through attrition, the owners of these lots who purchased based on the expectation that the lots can be developed will simply "go away" one way or another over time, confiscating these properties to advance the purpose of the no-growth agenda by regulation, without paying for the lots.

## FIRST CAUSE OF ACTION

### (By All Plaintiffs Against All Defendants For Violation of Civil Rights under 42 U.S.C. § 1983 And The Fifth Amendment For Regulatory Taking of Property)

126. Plaintiffs refer to, repeat, and incorporate herein by reference as though fully set forth at length, the allegations previously set forth in this pleading.

127. Plaintiffs are informed and believe, and on that basis allege that the actions and intentional inactions by Defendants constitute a taking of property for public use without compensation and is contrary to the Fifth Amendment and Fourteenth Amendment of the United States Constitution.

128. Plaintiffs are informed and believe that Defendants, acting in concert, have determined that they will never allow Plaintiffs to develop their lots to advance the public purpose of limiting growth to maintain the lesser developed character of Cambria, effectively re-zoning the properties to open space without formally taking such action. Plaintiffs are informed and believe and on that basis allege that Defendants have likewise denied Plaintiffs a connection to the sewer system, a property right they are entitled to utilize as a result of paying a special assessment to construct the sewer system for the same purposes.

129.   Plaintiffs are informed and believe, and on that basis allege that Defendants have intentionally decided against developing water resources that would allow additional development. For example, the District is seeking a permit for its Sustainable Water Facility which is designed with only sufficient capacity and will be limited to serve existing dwellings and those lots already on a District wait list. Plaintiffs are informed and believe, and on that basis allege the District employs the declared water emergency and a moratorium on issuing intent-to-serve letters as the excuse for not issuing service application forms, or processing service applications submitted by Plaintiffs and intentionally avoids taking steps to provide sufficient water resources.  By failing to inform Plaintiffs it has no plans to serve the properties even after the emergency is lifted, the District's actions are nothing less than an attempt to block development without payment of just compensation.

130.   Plaintiffs are further informed and believe that Defendants, acting in concert, have established procedures and policies designed to prevent development applications from being accepted, processed, approved, or denied by the County.

131.   Plaintiffs are informed and believe, and on that basis allege, the taking is permanent because Defendants have taken no actions that will allow for the development of sufficient water in the foreseeable future and have also affirmatively taken steps to incorporate growth limitations that, as a practical matter, will make it impossible for Plaintiffs to develop their lots even if an alternative water source was developed at some point.  Alternatively, Plaintiffs allege the taking is temporary, extending two years before filing this complaint to the final adjudication of a taking.

132.   The combined effect of the Defendants' actions is to deny Plaintiffs

all economically viable use of their property and compel Plaintiffs to bear a disproportionate individual cost of the Defendants' effort to limit growth to preserve the lesser developed character of Cambria and effectively re-zone hundreds of lots as open space.  Should Defendants wish to limit growth or create new open space by denying the right of certain lots to be developed, that burden is one which, in all justice, must be borne by the community as a whole, rather than those property owners denied the right of development of legal lots that are in all respects developable, if the District were to meet its obligation to provide water and sewer service to all parcels within its service boundary.

133.   The Defendants have caused a "*per se*" taking because they have denied Defendants all economically viable use of their properties.

134.   Alternatively, Plaintiffs allege a taking under the *ad hoc* balancing of factors approved under federal law.  In particular, Defendants have caused a regulatory taking based on combined effect of the consideration of character of the governmental regulatory scheme, the reasonable investment–backed expectations of the property owners, and the economic impact of the regulatory scheme.. *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104 (1978). Defendants' actions result in the equivalent of a physical taking because they force Plaintiffs to effectively surrender their right of possession to the property indefinitely to be maintained as "open space" while requiring Plaintiffs to bear the cost and burden of maintaining these lots.  For all practical purposes, the Defendants have confiscated the Plaintiffs' property for public use but have failed to provide compensation.

135.   The Defendants have refused to withdraw or modify the offending

regulations, so Plaintiffs must be monetarily compensated for the taking. As a direct and proximate result of the above-described actions by Defendants and each of them, Plaintiffs are informed and believed they have had their property taken with individual values exceeding $250,000 for each lot for a permanent taking; and in the alternative have been deprived of fair market economic use on a temporary basis.

136. Plaintiffs have been damaged by the taking of its property in an amount to be proven at trial, but Plaintiffs are informed and believe the property taken by Defendants has a value in an amount well in excess of $250,000 per lot.

137. Plaintiffs have incurred and will continue to incur attorneys' fees, expert witness fees, and other fees and costs, as a result of this proceeding, in amounts that cannot yet be ascertained but which are recoverable under the provisions of 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiffs pray judgment as follows:

1. For a judgment mandating Defendants jointly and severally pay Plaintiffs just compensation for property taken in an amount to be proven at trial;

2. For costs of suit, including reasonable attorneys' fees, under 42 USC § 1988 and otherwise;

3. For such other and further relief as the Court deems just and proper.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BLUM COLLINS, LLP
  Craig M. Collins


By:  /s/ Craig M. Collins
Craig M. Collins
Email:  collins@blumcollins.com
Attorney for Plaintiffs Michael Windler,
et al.


KASSOUNI LAW
  Timothy V. Kassouni


By:  /s/Timothy Kassouni
Timothy V. Kassouni
Email:  timothy@kassounilaw.com
Attorney for Plaintiffs Michael Windler,
et al.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial as to all claims and causes for which a jury trial is available.


BLUM COLLINS, LLP
   Craig M. Collins


By:  /s/ Craig M. Collins
Craig M. Collins
Email:  collins@blumcollins.com
Attorney for Plaintiffs Michael Windler, et al.


KASSOUNI LAW
   Timothy V. Kassouni


By:  /s/Timothy Kassouni
Timothy V. Kassouni
Email:  timothy@kassounilaw.com
Attorney for Plaintiffs Michael Windler, et al.

COMPLAINT

32